# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN E. WILLIAMS, III, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-19-465-SLP** |
| | ) | |
| MICHAEL LIGHT, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff John E. Williams, III, ("Plaintiff"), a state prisoner appearing *pro se*, filed this action under 42 U.S.C. § 1983, alleging civil rights violations.  (Doc. 1).  United States District Judge Scott L. Palk referred the matter to United States Magistrate Judge Shon T. Erwin for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C).  (Doc. 3).  It was subsequently transferred to the undersigned Magistrate Judge.  (Doc. 49).

Before the court is Defendant Scott Crow's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.  (Doc. 42).[1]  Plaintiff did not file a response, and the Motion is at issue.  (*See* Doc. 55, at 1) (granting Plaintiff until December 15, 2020, to file his response).  For the reasons set forth below, the undersigned recommends that Defendant Crow's Motion be granted in part and denied in part.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this court's CM/ECF pagination.

## I.       Procedural History and the Instant Motion

Plaintiff filed a Complaint asserting multiple claims against ten defendants related to conduct at the Cimarron Correctional Facility ("CCF").  (Doc. 1).  On screening, the court dismissed all of Plaintiff's claims except one claim against Defendant Michael Light for the alleged use of excessive force, one claim against Defendant Andrew Ferrell for the alleged failure to intervene against the use of excessive force, and one claim against Defendant Scott Crow for supervisory liability in relation to the denial of adequate medical care.  (Doc. 22).  Plaintiff has sued Defendant Crow in his official capacity. [2]  (Doc. 1, at 32).

With regard to Plaintiff's remaining claim against Defendant Crow, the court stated:

> [h]aving reviewed Plaintiff's pleading, giving it the liberal construction due a pleading filed by a pro se litigant, accepting its allegations as true, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has adequately stated a § 1983 claim against Director Crow for supervisory liability.  Plaintiff alleges a specific policy to exist for which Director Crow is responsible and alleges that, apparently because of that policy, he has not received treatment for what he alleges to be long-term, chronic medical conditions.  Instead, he alleges that he has been told that an inmate must "be seen by sick-call [a] routine three times for the same problem before [an inmate] can get treatment or see a doctor" and that no care at all is available for chronic pain and chronic injuries. Compl. 25, Doc. No. 1.  And he alleges that Director Crow (and his predecessor, Director Allbaugh) caused Plaintiff to suffer chronic and continuing pain by acting callously and recklessly to cause the policy to be enforced.  In light of Plaintiff's pro se status, the Court finds Plaintiff's § 1983 claim against Director Crow to be sufficient as pleaded for the instant stage of litigation.

---

[2] Plaintiff originally named Joe M. Allbaugh, the former director of the Oklahoma Department of Corrections ("ODOC"), as a defendant.  (Doc. 1, at 3).  Because Mr. Allbaugh was sued in his official capacity only, current ODOC Director Crow was automatically substituted as defendant pursuant to Fed. R. Civ. P. 25(d).  (*See* Doc. 22, at 4, n.4).

(Doc. 22, at 4).   Plaintiff seeks monetary damages (both actual and punitive) from Defendant Crow and injunctive relief in the form of "adequate medical care for [his] long term injuries and chronic pain."  (Doc. 1, at 37).

Defendant Crow filed the instant Motion requesting that the court dismiss the remaining claim against him, or alternatively grant him summary judgment on this claim, because (A) Eleventh Amendment immunity prohibits the award of monetary damages, (B) Plaintiff's request for injunctive relief is moot, and/or (C) Plaintiff failed to exhaust his administrative remedies.  (Doc. 42).

## II.   Defendant Crow's Motions to Dismiss for Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a claim for lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction*." Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted).  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co*., 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).

Defendant Crow's arguments regarding Eleventh Amendment immunity and mootness are made on the pleadings and attack the court's subject matter jurisdiction. "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams v. Utah Dep't of Corrs.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (brackets and internal quotation marks omitted); *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) ("The Eleventh Amendment is a

jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state.") (internal quotation marks omitted). The court "ha[s] no subject-matter jurisdiction if a case is moot." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).

### A.   The Eleventh Amendment Bars Plaintiff's Claim Against Defendant Crow for Monetary Damages.

Defendant Crow argues he is entitled to immunity pursuant to the Eleventh Amendment on Plaintiff's claims for monetary damages. "The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams*, 928 F.3d at 1212. "This immunity extends to . . . state officials who are sued for damages in their official capacity." *Id.* There are three exceptions to Eleventh Amendment immunity: (1) "a state may consent to suit in federal court;" (2) "Congress may abrogate a state's sovereign immunity by appropriate legislation;" and (3) "the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). Oklahoma has not consented to be sued in federal court, and Congress has not abrogated state sovereign immunity by creating a private right of action under § 1983. *Berry v. Oklahoma*, 495 F. App'x 920, 921-22 (10th Cir. 2012) (citing Okla. Stat. tit. 51, § 152.1); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

The ODOC "is . . . shielded by sovereign immunity because it is an arm of the state." *Berry*, 495 F. App'x at 922. Because Defendant Crow is an ODOC employee, Eleventh Amendment immunity applies to bar Plaintiff's claims for monetary damages against him

in his official capacity. *See Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014) ("Because the defendants are employees of the Oklahoma Department of Corrections[,] . . . the Eleventh Amendment applies to the official-capacity claims for damages."). Therefore, the court lacks subject matter jurisdiction to entertain Plaintiff's claim for monetary damages against Defendant Crow in his official capacity. *See Peterson*, 707 F.3d at 1205; *see also Gosselin v. Kaufman*, 656 F. App'x 916, 918 (10th Cir. 2016) (holding, where a plaintiff requested both compensatory and punitive damages, "to the extent [the plaintiff] seeks money damages . . . his claims against Defendants in their official capacities are barred by sovereign immunity"). Accordingly, the court should **GRANT** Defendant Crow's motion to dismiss Plaintiff's claim against him for monetary damages.

### B.    Plaintiff's Claim for Injunctive Relief Is Not Moot.

In contrast to Plaintiff's claim against Defendant Crow for monetary damages, his claim for injunctive relief in the form of the provision of adequate medical care is excepted from the application of Eleventh Amendment immunity. *See supra*, *Muscogee (Creek) Nation*, 669 F.3d at 1166. "[A] plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Williams*, 928 F.3d at 1214. Here, Plaintiff alleges an ongoing violation of his Eighth Amendment right to adequate medical care and seeks provision of such care in the future. (*See* Doc. 1, at 3, 37). However, Defendant Crow asserts that Plaintiff's claim for injunctive relief should be dismissed as moot because

he was moved from CCF to a different facility.  (Doc. 42, at 4, 10-12).[3]  He argues that now Plaintiff "is under the care of entirely different medical providers than those named as defendants in this matter" and can seek redress if he is dissatisfied with the medical care there.  (*Id.* at 11-12).

"Where a plaintiff seeks an injunction, his susceptibility to *continuing* injury is of particular importance."  *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).  "The crux of the mootness inquiry in an action for prospective relief is whether the court can afford meaningful relief that will have some effect in the real world."  *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012) (internal quotation marks omitted).  A prisoner's transfer to another detention facility renders moot his claims for injunctive relief related to conditions at that facility.  *See Jordan*, 654 F.3d at 1027 ("Where the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief.");  *Toevs v. Milyard*, 563 F. App'x 640, 645 (10th Cir. 2014) ("Transfer

---

[3] The court takes judicial notice that Plaintiff is currently housed at the Mack Alford Correctional Center in Stringtown, Oklahoma.  *See* Oklahoma Department of Corrections OK Offender, https://okoffender.doc.ok.gov/ (OK DOC# 524143); *Triplet v. Franklin*, 365 F. App'x 86, 93 n.5 (10th Cir. 2010) (taking judicial notice of the offender search on the ODOC website and citing Fed. R. Evid. 201).

generally moots an inmate's claims for remedies of declaratory and injunctive relief.").

"However, where a prisoner brings a lawsuit challenging policies that apply in a generally uniform fashion throughout a prison system, courts have been disinclined to conclude that the prisoner's declaratory or injunctive claims are moot, even after he has been transferred to another prison in that system." *Jordan*, 654 F.3d at 1028.

Here, Plaintiff alleges that Defendant Crow (and formerly, Mr. Allbaugh), as Directors of ODOC, enforced a specific policy causing him chronic pain and suffering. (Doc. 1, at 24-25; Doc. 22, at 4).  While the Complaint does not specifically allege that this policy is applied in a uniform fashion across all ODOC prisons, Defendant Crow has presented no evidence to suggest it is not.  Thus, viewing all facts in a light favorable to Plaintiff and giving his Complaint a liberal construction, the undersigned finds that Plaintiff's request for injunctive relief in the form of adequate medical care is not moot due to Plaintiff's transfer to another facility.  If Plaintiff remains subject to the alleged policy denying him adequate medical care at his new facility, and the court finds in his favor, the court could fashion meaningful prospective relief.  Accordingly, the court should **DENY** Defendant Crow's motion to dismiss Plaintiff's claim for injunctive relief on the ground of mootness.

### III.    Defendant Crow's Motion for Summary Judgment

Defendant Crow argues that Plaintiff failed to exhaust his administrative remedies as to his claim seeking provision of adequate medical care.  (Doc. 42, at 6-8).  Because exhaustion is a prerequisite to filing suit, he asserts that Plaintiff's "Complaint must be dismissed in its entirety."  (Doc. 42, at 8).  Because the exhaustion argument relies on

material outside the pleadings, the court should evaluate it as a motion for summary judgment under Federal Rule of Civil Procedure 56, as suggested by Defendant Crow, who file his motions in the alternative.  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When a defendant asserts an affirmative defense – such as a failure to exhaust administrative remedies – as a basis for summary judgment, he "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted when the evidence is viewed in the light most favorable to the plaintiff." *Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 746 (10th Cir. 2014) (internal quotation marks omitted).  "[A] defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).  If the defendant satisfies this burden, the plaintiff would incur a duty to "demonstrate with specificity the existence of a disputed material fact," *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997), or "show that remedies were unavailable to him as a result of" the actions of prison officials. *Tuckel*, 660 F.3d at 1254.  In the absence of either showing, the defendant would be entitled to summary judgment on the affirmative defense.  *See id*.

A.      **Exhaustion Requirement**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Because exhaustion of available remedies "is mandatory under the PLRA[,] . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  This means a prisoner must use "all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)."  *Id.* at 90 (internal quotation marks omitted).

But, as noted above, the PLRA's exhaustion requirement is limited to such administrative remedies as are available to be exhausted.  "Administrative remedies are deemed unavailable if, among other things, 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  *May*, 929 F.3d at 1234 (quoting *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1860 (2016)).  The court liberally construes grievances filed by unrepresented inmates. *Greer v. Dowling*, 947 F.3d 1297, 1302 (10th Cir. 2020).

B.      **The ODOC Grievance Procedure**

The ODOC Operations Memorandum OP-090124 establishes the offender grievance process related to Plaintiff's complaints against Defendant Crow. (Doc. 42, at

5).  The first step in the grievance process is "informal resolution," including submitting a "Request to Staff" ("RTS") if the complaint is not resolved.  (Doc. 41, Ex. 2, at 6-8).  The Request to Staff "must be specific as to the complaint, dates, places, personnel involved and how the inmate/offender was affected," and "only one issue or incident is allowed per form."  (*Id.* at 7).

When an issue is not resolved at the informal-resolution stage, the inmate must submit a grievance form.  (*Id.* at 8).  Here too, an inmate is limited to presenting only one issue or incident in a grievance.  (*Id.* at 9).  The policy provides that "[i]f the inmate/offender does not follow instructions as explained in this procedure and on the grievance forms, the grievance may not be answered."  (*Id.*)  The reviewing authority screens grievances to determine, among other things, whether the inmate followed proper procedures for submitting a grievance and whether the grievance and/or RTS contained more than one issue.  (*Id.* at 10-11).  A grievance containing "any errors in the filing process" is returned unanswered, and the reviewing authority "may allow the inmate/offender to correct the errors within 10 days."  (*Id.* at 11).  If the inmate fails to correct the errors, the grievance "will be returned unanswered and the inmate/offender will have waived/forfeited the opportunity to proceed in the grievance process."  (*Id.*)

The final step in the grievance procedure is the appeal, which must be based on newly discovered or available evidence or probable error committed by the reviewing authority.  (*Id.* at 12).  Grievances and grievance appeals containing more than one issue "will not be answered."  (*Id.* at 14).

C.      **Plaintiff's Grievance Timeline**

The undisputed facts set forth in Defendant Crow's motion and supported by Plaintiff's submissions and officials' responses establish the following timeline:[4]

- February 1, 2019:[5] Plaintiff submitted an RTS stating he was experiencing medical issues as the result of a fall on January 28, 2019, caused by his knee giving out or slipping out of place.  (Doc. 41, Ex. 6, at 2).  He noted his history of medical issues with his knee prior to January 28, 2019.  (*Id.* at 3).  Plaintiff detailed injuries from his fall, including aggravation and exacerbation of pre-existing issues with his back and knee and a new injury to his left shoulder.  (*Id.* at 2-3).  He stated that he had previously filed grievances requesting a knee brace and pain medication, noting that his "health ha[d] diminished" due to his history of receiving inadequate medical care.  (*Id.* at 3).  Plaintiff asked to be provided with chronic pain medications, a knee brace with straps, a back brace, and physical therapy. (*Id.* at 2).  He asserted his Eighth Amendment rights were violated by the deliberate indifference of the CCF medical providers.  (*Id.* at 3).

---

[4] Because Plaintiff did not respond to Defendant Crow's motion, the court may deem these facts admitted.  LCvR 56.1(e) ("All material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant . . . .").  But, they are also supported by the evidence cited by Defendant Crow in support of his motion.

[5] ODOC Operations Memorandum OP-090124 states "[t]here is no mailbox rule regarding submission of requests to staff or grievances and grievance appeals. The document must be received in the appropriate office within the required time frame."  (Doc. 41, Ex. 2, at 4).  Thus, Plaintiff's administrative filings are listed by the dates on which they were received and not the dates on which he completed the forms.

- February 4, 2019: Plaintiff received a staff member's response to the RTS, stating: "Your new fall was seen by provider and was offered ACE wrap which you refused.  You also offered Ibuprofen for pain.  If you need to see provider again submit a sick call." (*Id.* at 2).

- February 8, 2019: Plaintiff submitted a grievance to the reviewing authority complaining that a lack of adequate medical care led to his fall on January 28, 2019, and his resulting injuries.  (*Id.* at 4-5).  Plaintiff noted his prior efforts to obtain medical care for his back and knee, dating to 2015, as context regarding the pre-existing injuries to his back and knee, which he alleged were aggravated and exacerbated by his fall.  (*Id.* at 5). He also alleged a new injury to his left shoulder.  (*Id.*)

- February 28, 2019: Warden Byrd returned Plaintiff's grievance unanswered.  (*Id.* at 6).  Two reasons were listed for returning the grievance unanswered: Plaintiff addressed more than one issue in his grievance, and the RTS and grievance were not specific as to the complaint, dates, place, personnel involved, and how the inmate was affected.  (*Id.*) Warden Byrd gave Plaintiff a final opportunity to resubmit a corrected grievance within ten days.  (*Id.*)

- March 4, 2019: Plaintiff resubmitted his grievance to the reviewing authority.  (*Id.* at 7-8).  In this submission, Plaintiff stated: "My complaint is not receiving adequate medical care that led to me being physically injured.  My injuries were sustained due to Dr. Payne failing to treat my injuries and/or giving authorization to other nurses to treat my long term injuries.  I've made medical requests pertaining to my back and knee dating back to 2015 up to November of 2018.  These new injuries I occurred took place on

1/28/2019." (*Id.*)  Plaintiff again described the worsening of his prior conditions as well as new injuries, all resulting from his fall.  (*Id.* at 8).

- March 21, 2019: Warden Byrd again returned the grievance unanswered.  (*Id.* at 9). He stated the grievance was being returned because the RTS was filed out of time, the grievance addressed more than one issue and was not specific, and Plaintiff failed to follow previous instructions for filing the grievance.  (*Id.*)

- April 1, 2019: Plaintiff submitted an appeal to the Administrative Review Authority. (*Id.* at 10).  Plaintiff noted that his RTS was filed within seven days of his fall on January 28, 2019, and was therefore timely.  (*Id.*)  He also stated that the "issue was not receiving adequate medical care that led to further injury," and that he "was specific in RTS and grievance about [the] complaint and dates."  (*Id.*)

- April 30, 2019: Plaintiff's appeal was returned unanswered by the Acting Medical Services Manager as out of time.  The notice stated that Plaintiff had "failed to correct all grievance errors as indicated by the [Reviewing Authority] and properly resubmit within ten days."  (*Id.* at 11).

### D.  Plaintiff's Failure To Exhaust Administrative Remedies Should Be Excused Because Prison Officials Improperly Made the ODOC Grievance Procedure Unavailable to Him.

Defendant Crow argues that Plaintiff did not exhaust his administrative remedies because he "failed to fully and correctly pursue his complaints according to ODOC policy." (Doc. 42, at 8).  An inmate fails to exhaust his administrative remedies when he makes procedural errors at the grievance stage and forfeits his opportunity to proceed with the grievance process.  *See Morris v. Fallin*, 798 F. App'x 261, 268-69 (10th Cir. 2020)

13

(holding an inmate failed to properly exhaust his claims where his appeal to the administrative review authority was returned unanswered for raising additional issues not contained in the RTS).

Plaintiff's alleged failure to exhaust stems from the reviewing authority's determination that Plaintiff's second submission of his grievance (after an opportunity to correct the first grievance) addressed more than one issue and was not specific. (Doc. 41, Ex. 6, at 9). Under the grievance procedure, this alleged failure to correct the grievance was deemed to be Plaintiff's forfeiture of the opportunity to proceed in the grievance process with an appeal. (Doc. 41, Ex. 2, at 11). It is undisputed that the Administrative Review Authority did not reach the merits of Plaintiff's grievance. (Doc. 41, Ex. 6, at 11). However, Plaintiff's failure to exhaust the ODOC grievance procedure should be excused because prison officials improperly made administrative remedies unavailable to him "and thereby prevented [Plaintiff] from completing the grievance process." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010).

Plaintiff's first grievance was returned to him for containing more than one issue and lacking specificity "as to the complaint, dates, places, personnel involved, and how [Plaintiff] was affected." (Doc. 41, Ex. 6, at 6). After Plaintiff resubmitted the grievance, it was rejected again for containing more than one issue and lacking specificity, and also for an untimely RTS and failure to follow previous instructions. (*Id.* at 9). The rejections of Plaintiff's grievances did not explain any rationale for finding that Plaintiff presented more than one issue or lacked specificity.

14

The undersigned disagrees with the reviewing authority's construction of Plaintiff's use of the grievance procedure.  Under a plain reading of Plaintiff's RTS and grievances, he grieves one issue: lack of adequate medical treatment for the injuries resulting from his fall on January 28, 2019.  (Doc. 41, Ex. 6, at 2-5, 7-8, 10).  In making that grievance, he was specific as to the complaint (lack of adequate medical treatment); date (January 28, 2019, and dates thereafter on which he sought treatment), the place (he fell outside, on the way in from recreation; he sought treatment at CCF); the personnel involved (Ms. Rackley, Dr. Payne, and the Correctional Health Services Administrator); and how the inmate was affected (untreated pain for the exacerbation of back and knee symptoms and new shoulder injury).  (*Id*.)  Plaintiff's grievances also contain details of his medical history regarding his pre-existing knee and back conditions, which he believes contributed to the fall on January 28, 2019.  (*Id*.)  He further describes previous interactions with medical personnel regarding treatment for his knee and back and his previous administrative attempts to resolve complaints about medical care.  (*Id*.)  However, read in context, these details are included as background information in an attempt to be specific, not as an attempt to raise more than one issue.   Plaintiff's inclusion of this information is understandable, considering he was faced with the dilemma of having his RTS and grievances rejected for lack of specificity.  (*Id.* at 6, 9).  Thus, the undersigned finds that the prison officials improperly rejected Plaintiff's RTS and grievances for containing more than one issue and for lacking specificity.  Moreover, the other grounds relied upon by the prison officials are also impermissible bases for rejection.  Plaintiff's RTS was received on February 1, 2019, four days after his fall on January 28, 2019.  (*Id.* at 2-3).  Thus, Plaintiff's RTS was

submitted within seven days of the grieved incident, as required by ODOC procedure.  (*Id.* at 9).  Plaintiff also did not "fail[] to follow previous instructions for filing [his] grievance." (*Id.* at 9).  Plaintiff followed instructions for resubmission by timely resubmitting a grievance that raised only one issue and was specific.

In sum, Defendant Crow's argument that he is entitled to judgment as a matter of law on Plaintiff's claim regarding inadequate medical care because Plaintiff "failed to fully and correctly pursue his complaints according to ODOC policy" is unpersuasive.  (Doc. 42, at 8).  Plaintiff complied with ODOC grievance procedure and attempted to resolve his request for medical treatment for his injuries from his fall on January 28, 2019, through the administrative process.  However, the prison officials responsible for handling Plaintiff's grievances "prevent[ed], thwart[ed], or hinder[ed] [Plaintiff's] efforts to avail himself of an administrative remedy" by rejecting the RTS and grievances on improper bases.  *Little*, 607 F.3d at 1250.  These actions rendered the appeal and full ODOC administrative remedy on the merits "unavailable" to Plaintiff.  *Id.*  For these reasons, the undersigned recommends excusing Plaintiff's inability to complete the ODOC grievance process and **DENYING** Defendant Crow's motion for summary judgment on the affirmative defense of failure to exhaust administrative remedies.

## IV.    Recommended Ruling and Notice of Right to Object.

For the reasons discussed above, the undersigned recommends that that court rule as follows on Defendant Scott Crow's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 42):

(A) **GRANT** Defendant Crow's motion to dismiss Plaintiff's claims against him for monetary damages, due to Eleventh Amendment immunity;

(B) **DENY** Defendant's motion to dismiss Plaintiff's claim for injunctive relief in the form of prospective adequate medical care, finding that, although Plaintiff has been transferred to another facility, the claim is not moot; and

(C) **DENY** Defendant's motion for summary judgment on the affirmative defense of failure to exhaust administrative remedies, finding that Plaintiff's failure to exhaust should be excused because prison officials improperly made such remedies unavailable to him.

**The court advises the parties of their right to object to this Report and Recommendation by July 14, 2021,** under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  The Court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not terminate the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 23nd day of June, 2021.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

17